GASP and I welcome the opportunity this morning to address what we consider to be a facially incorrect ruling by the District Court, and we live with the consequences of that ruling for the last two and a half years. This appeal, as it's framed before this Court, presents a single issue for resolution. And that issue is, was the District Court correct in ruling that on the evidentiary record below, GASP did not meet its burden of showing the existence of a triable issue on the issue of whether Per-Se's action caused GASP injury and damages? The real issue here, then, is causation. It is indeed. And you say they're late. They submitted bills late. But we're in the record. We have cases, medical cases, that say late submission of bills doesn't cause the lack of payment. So what do you have beyond that that would get you past sovereign judgment? Okay. Let me address that directly. There are, as the Court is aware, there are two types of evidence presented in this case on the issue of causation and damages. One was specific documentation in the form of e-mails, admissions, and depositions. And the other was the analysis done by the experts, Mr. Burley and Mr. Mowery. Let me address the Court's question with three items that are in the record that should pass, each of them alone should pass that threshold of causation. The first is the June 29, 2000 series of e-mails that appear in the record at ER 1117 and 1118. These are, in themselves, internal e-mails from Per-Se that are a clear admission of damages caused by Per-Se. And if you'll indulge me, let me read from a couple of them directly. The first e-mail is from John Pelequin, a Per-Se employee, who says that we've researched a large sample of Medicare pay class and found that there are a tremendous amount of Medicare accounts that need to be adjusted off the system due to the fact that no follow-up was done on the accounts and the accounts are now past filing limits. The response to that e-mail by Elisa Vampato, another employee of the company, says, I'm at a loss with this one. Do you have suggestions on how to approach the group for the writing off of $350,000 due to our operational downfall? That's her words in her e-mail. That phrase alone, writing off $350,000 due to our operational downfall, is all I need to establish that Per-Se did something that caused damage to gas. The follow-up is then from a vice president that suggests in his e-mail that we hide the problem from Per-Se's management. I'm sorry, from gas management. But we can stop at the second e-mail, which is writing off $350,000 due to our operational downfall established causation. There's two other instances in the record I can point to. First of all, let me go back to how the district court looked at that e-mail, because that's one of the e-mails the court analyzed in its order. The court says, and this is at ER 1561, although this court agrees that the June 29, 2000 e-mail demonstrates a failure by defendants to file a timely appeal with Medicare, the record is devoid of evidence linking defendants' failure to plaintiff's damages. Well, I would submit that that e-mail saying that the write off $350,000 due to our operational downfall passes that test. It wasn't just a deviation from the appeal deadline. In other words, you get a rejection in the appeal deadline to resubmit the claim. They just simply weren't even submitted within the time period provided for initial submission of claim. Clearly, that's what the e-mail says. I don't want to cut you off from the last two items because it's very important. I want to very definitely list the items you claim are in the record. But there is an old doctrine of the law. You cannot speculate on the fact of damage causation. But a jury can speculate on the amount of damage if, in fact, damage is shown to have occurred from the defendant's acts. Absolutely. I agree entirely with that. So that's what I'm listening very carefully to these items is to see if you met that standard. In other words, if these items show, in fact, damage, even if they did not relate, as I think the district judge was complaining about, to the method of calculation of the amount of damage by the experts that were profiting. I think the court's question goes to the crux of the issue. My belief is that the district court was troubled by what the court is identifying, which is a number of items in the record suggesting that some bad act had occurred that may have caused damage, and then a number which the court believed was detached from corresponding to those items. Now, we would submit that the larger damages numbers presented by the expert were, in fact, justified on different theories. But nevertheless, it's not the law that if I can prove that their operational downfall caused some loss of money, the fact that I go into court and say that's $2 million. So the fact of damage is supported by what's shown. You've given us one. Okay. The other two I will give you are in the record at ER 936 is a declaration provided by Jim Coleman. Now, Jim Coleman was with an organization called MAC, or Medical Accounts Control. MAC is the organization which GASP retained to take over its accounts from Per Se and see what could be collected. He testified in a declaration submitted to the court and also in deposition that when he took over, an entire banker's box of claims was handed to him that had never been submitted to any of the payors. These were the failure to credential claims? These were the failure to credential claims. That's right. And that is one of Per Se's responsibility being to credential the doctors so that they can then be qualified. The response was, of course, failure to credential isn't always the biller's, the bill contractor's fault. A lot of times it's the delay in the doctors or the doctor's organization to submit the credentials or to respond to inquiries regarding the credentialing. Certainly. And that is the response. That is, elsewhere in the record, there are admissions by Lease of Empato that, in fact, in certain instances, they had all the doctors' information and that the claims were still not submitted because of some internal fallacy. There was some discussion about an 18-month period. Well, this is the point, I think, with respect to that. An explanation. When I say that these claims, a box full worth $2 million, says my expert Mallory, were past what is functionally a statute of limitations, could not be collected because were not submitted within the requisite time. And I say, that's Perseus' fault. Look at this evidence. First of all, look at the fact that they exist and were not submitted. Second, look at the evidence in the record from witnesses like Sepi Azari, who handled the credentialing, about what chaos there was. There's e-mails from Jane Murphy Smith, their VP, saying what's going on with the credentialing. But nevertheless, the response that comes back to say, well, no, that's not our fault. That's your fault. Dr. Jones didn't get us back the application on time. That is the essence of a tribal issue on a summary judgment motion. We are now not on the causation issue. We're now as an explanation as to why it is that occurred. And I can then at trial, they're free to present evidence, if they wish, that the doctors are the sole responsibility, the sole source of that failure. And, of course, you have to ask a question here. And looking at some of the other cases to prove actual causation, a sampling of the people who owed the money was taken and shown. If we had been billed, we would have paid. There's no kind of evidence of that sort in this case. Is there? In terms of a survey, you mean, a sample? A survey to show that the failure to bill caused the loss. Because they could have billed 1,000 people, and 1,000 people could have just simply not paid. They could have been old, retired, pensioners, et cetera, said we can't pay. That would not have been caused by the failure to bill. So is there any evidence in the record that people would have paid had they been billed? Well, there is. And it is in the form of the per se numbers, which it generated looking at two years of historical data from GASP, over what to expect out of this patient group and these payors. So what we have, and this gets to the expert end of the analysis, is what we have is an expert looking through and saying that per se says that out of this group of payors, normally, under normal circumstances, you should get a return of X. What I find when I analyze the numbers is you got a return of Y. But that goes to the amount of damage, as Judge Jones was saying. It doesn't go to the causation. Well, what it goes to is when I link up an overwhelming record of internal screw-ups and things being failed to be filed and credentialing not being done and various other things that I've laid out in the record, when I show you that record and I show you the end result is that the collections are down, let's say they're down $3 million in what they should have been. And I show you as a separate issue that it is accepted in industry and admitted by their expert that when you delay billings, they don't just all get paid, that there's a reason why people put things in categories of 1 to 30 days, 1 to 60 days, up to 120 days, that it's accepted in the industry and their witnesses and expert admit it in the record that when you put it in over 120 days, you don't collect it all. And that is buttressed, that is the exact result. The answer to the judge's question is, as the expert admitted, there was no statistical sampling of his analysis. The analysis was variance analysis, variance from normal or average. There was no auditor statistical sampling of the individual accounts. I think you have to hang your argument, if you prevail at all, on the argument that you showed causation in specific instances that you are enumerating here. But you have to concede that there was no statistical sampling, individual account sampling on the overall average diversion analysis that the expert did here. Well, you are correct that my expert who did what you're calling a diversion analysis, a variance analysis, did not do a sample. However, I would submit that we have, through the work of MAC, a review of specifically 23,000 accounts which they looked at. They categorized those accounts. These are accounts that were handed over from Per Se to be collected. They analyzed all 23,000 of those accounts. They came up with detailed reports, and in those reports, they listed patient name, dates, and reason why they couldn't be collected. Then Maury, my expert who's a CPA, went through those accounts, eliminated the ones that could not possibly be blamed upon Per Se. For example, payor went bankrupt, patient died, write-off for gas because of some charity, eliminated those as possible categories that could be played at the footstep of gas. Did you argue that in response to the motion? Absolutely. That is in the record. And the judge doesn't analyze that? The judge ignored it. The judge did not. The answer in the order, the judge did not analyze that, nor, of course, did I have an oral argument in order to raise these issues with the judge. I got the order in the mail. The third category I want to address, and I've covered it to some degree of actual evidence, is this idea of billing delays, that there is. There is. It's got three parts to it. The first is I got admissions from the defendants that their activities, as described in the emails, would cause days in AR aging to increase. They admitted that. They also admitted that days in AR, aging increased, diminishes the opportunity to collect the money. And then the third part is Maury, I'm sorry, Burley, my expert, then threw a figure onto that and tried to calculate what the impact was. But the first two steps, we did things which caused days in AR to increase and caused days aging to increase, and that that is admittedly causes you not to be able to collect the full amount establishes causation. Now, if they want to argue about what the dollar impact is of that, and that's actually what the expert said. The expert said there's no dollar to dollar ratio there. Just because it's over 120 days, you don't lose all of it. I'm not arguing you lose all of it, but now we're into a separate discussion, which is what's the damages amount, not the fact of the causation. In my remaining time, I want to go to a different issue, and that is the application by the district court of the standard of causation. And here is another issue that's been briefed extensively, and that is do I have an obligation as the plaintiff making this claim to disprove other potential factors that may be the cause other than malfeasance by the defendants. And the interesting thing, of course, as we look at this record on a summary judgment motion, is that the defendants made a strategic choice, and the choice was not to put in evidence to support alternative explanation for what happened, because doing that would create a tribal issue, obviously. If I said, it's your fault, and they said, no, it's your fault, we wouldn't be here. We'd have a tribal issue. So instead, they elected to present hypothetical potential things that may have possibly caused it not to be collected, and then argued that I had not, in my presentation to the trial court, been able to eliminate those possibilities. Now, that is not the law of causation in California, and it's clear that the court made two errors in applying it. The first is, in the court's order, at ER 1559, the court requires, this is in a footnote, requires GASP to provide unambiguous proof that a direct causal link exists between breach and damage to prove causation. And it cites the case of Beasley v. Wells Fargo for that proposition. Well, Beasley v. Wells Fargo is a causation case, but nowhere does it mention the need for unambiguous proof. Now, I'm not sure what the judge meant by that, because I didn't get a chance to talk to him. Counsel, let me ask you. The Kyocera case says that the judge, in trying to determine what the cause was, or whether it was a substantial factor in causing the damage, can look to other alternative causes. You seem to think that that was inappropriate on the part of the district court judge. What I think is inappropriate is to put me to the burden on a summary judgment motion of proving the negative, of eliminating those as possible causes. And there's clear cases. The Callahan case and the Rossi case, which we cite, come from the Third Circuit, say that it's not my obligation to do that at the status of a summary judgment motion. In fact, the Rossi case says that is an evidentiary issue to be decided downstream. Excuse me. Go ahead. I apologize. It's your question. I just want to, quickly. The California case, the Bieran case, says mere delay does not prove causation at all. So the district court judge, as I read the record, was saying, okay, you proved delay. You proved delay on the part of the doctors. You proved delay on the part of that company, on the part of the hospital, and so forth. But what did you present to show that what was the substantial cause of the actual loss? What caused the loss? Not the amount, but what actually caused it? Let me go back to this, because obviously I'm not making myself clear on this. The issue of actual, the court is focused on the question of delay being my argument for damages. And it is one of my arguments for damages. However, the evidence which I've talked about this morning, which is $350,000 lost, can't be recovered because of our operational downfall in an e-mail, that's not a delay issue. That's a we didn't submit it, and we can't collect it, and we have to tell our client we lost them $350,000 in claims. Blowing the statute of limitations on a claim is not a maybe it's just a delay which doesn't result in any damages. It's clear. They blew the statute. They can't recover the claims anymore. And the result of that is $2 million in claims lost. But how do we know they couldn't recover the claims if they hadn't blown the statute? I think that's what the district court judge is. I read it was talking about. Okay. Well, the district court judge cannot on a summary judgment motion create the inference in favor of per se that 23,000, not all 23,000 were blown claims, but that whatever, let's say 5,000 were blown claims, that those all would have been recoverable entirely even though the statute had run on them. I'm entitled to the inference that out of those 5,000 that they blew the statute on, certainly a number of them, probably most of them I would submit, would have been fully collectible. So you're down to one minute. So you may want to reserve that or not. This is my one minute, including my rebuttal time. This is all your total time. Then I will stop talking. Thank you. All right. Thank you. We'll hear from Mr. Halperin, per se technologies. May it please the court. Ernst Halperin on behalf of defendants. I will refer to them collectively as per se. The central question. This appeal is if a plaintiff is given every opportunity to gather evidence   and then articulate how it will prove its damages at trial and elects to do so through opinions of experts whose opinions do not draw a causal link between the deficiencies alleged in the complaint and any damages, must the district court have a pointless trial or can the district court grant summary judgment? And the answer to that question is the district court can grant summary judgment and properly did so, Your Honors. Well, the complaint of the appellant is not the wrong standard here. It's a substantial factor. They don't have to show causation for every one of these accounts that's beyond the billing period, that in fact that account is otherwise recoverable if the time period hadn't been delayed. All they have to show is that, in fact, damage occurred. They don't have to show it account by account. They just have to show, quote, unquote, substantial factor. And out of picking his number, 5,000, I think he didn't prove 5,000, of course, certainly, but he certainly proved one, two, three items here that a number of these accounts, 350,000, the $2 million worth of accounts, went beyond the billing period as a direct cause of per se's violation. So the only last logical link is, well, were all of those collectible otherwise? And if the standard is substantial factor, did the judge not apply the wrong standard? In other words, you have to prove, Plaintiff, at summary judgment, that they were otherwise collectible, every one of them. The standard, actually, Your Honor, is that he has to prove a causal link. He has to prove that but for he has to provide evidence where a jury could say but for Plaintiff's negligence, defendant's negligence, these accounts would have been collected. And I'd like to point to the fact that he doesn't have to do the but for for every single dollar of loss. He doesn't. He doesn't. But the analysis, but he does, Your Honor, for to show, he needs to show some damages. And I'd like to address the Mowry report that he talked about with these 27,000 accounts. And he said, I'm entitled to an inference as the Plaintiff that some of these accounts would have been collected. And he says, the reason I'm entitled to that, even though Mr. Mowry in his expert report testified under penalty of perjury and admitted he did not analyze why accounts that were classified by Mac had become time barred. He just assumed it was per se's fault. So you've got expert's assumption there. That's not evidence. He can't rely on that. He says, well, Mac analyzed these accounts and classified them as past due. But the declaration of Kevin Coleman, excuse me, not Kevin Coleman, of Mr. Coleman that he points to in his brief and his opening argument, Mr. Coleman specifically testifies in his declaration under penalty of perjury. And I will quote here, the purpose of our review was not to determine whether per se had mishandled any particular account, but to collect whatever money we could and goes on. So what they're saying is we get to assume that a certain portion of these accounts that were listed by Mac as past filing deadlines were past filing deadlines because of something per se did, when there's no basis to do that because Mac's analysis wasn't directed towards that question, Your Honor. There's no basis? There's not admission in the e-mails of delay in credentialing? We've addressed those in the quite extensive reply separate statement where we go e-mail by e-mail, and they're not. They're not admissions that everything that, excuse me. Well, why don't you comment specifically on the e-mail referred to by Mr. Kushner? The Pellaquin e-mail. The one that is due to operational downfall, the 350,000. So the e-mail reads, Elise, we've researched a large sample of the Medicare pay care class and found there are tremendous amount of Medicare accounts that need to be adjusted off assistance. I'm sorry. I'm reading too fast. Due to the fact. Yes, you are. Due to the fact that no follow-up was done on the accounts, and the accounts are now past filing limits for appeals. Now, Mr. Krocheter characterizes this as these claims were never filed in the first place. But the inferences that the Court may draw are only the reasonable inferences allowed. And Mr. Krocheter's experts didn't go and look at these accounts or even attempt to look at these accounts. He's got no evidence other than this one e-mail, and this e-mail doesn't get him past summary judgment, Your Honors. Because as his own experts admitted, there may be valid reasons to deny an appeal. So he can't prove that but for her says not filing these appeals, he would have suffered even a dollar of damages. So this e-mail doesn't get him there. He's left after one analyzes all this, and the district court did a very careful job. He accused the district court of stopping reading at the end of our undisputed facts when the district court's opinion actually deals only with, addresses the facts in their additional separate statement in opposition to summary judgment. He's left with his expert reports. And the expert reports don't show causation. They don't link any activities of Per Se that are alleged to be the breaches to any damages. Again, I'll recap. Maury assumes everything is Per Se's fault. And the plaintiff, Gast, says that's okay because Mack already analyzed the accounts. But we've got the declaration under penalty of perjury of Mack's general manager that the purpose of their review was not to determine if Per Se had mishandled the accounts. What are we left with? We're now left with Robert Burley's report. What does Robert Burley do? He took Gast's temperature three different ways. He took it on the forehead, he took it in the mouth, he took it under the arm. He came up with three measures of damages, and he said they're damages because I have a standard and Gast's performance didn't meet the standard on gross accounts receivables numbers, and the difference is damages. Well, that doesn't link damages to anything in the complaint. Now, he used MGMA statistics in all three analyses. And these are statistics he previously trashed as unreliable and said in expert reports, should not be used to evaluate the performance of any billing company. Why isn't the combination enough? That is, here's some identifiable potential causes of loss, and the expert says, according to the statistical variance analysis, there is a fact of loss compared to industry average, compared to the accounts receivable averages here in this case. Why isn't the combination of those two enough? The combination of those two is not enough, Your Honor, because the expert's numbers are pulled out of thin air, because the numbers that he's claiming are damages. The losses he's calculating are just as was pointed out earlier, measuring a variance to a standard that was never agreed upon and does not have any relation to per se's performance. You don't have to measure it according to a standard that was agreed upon. This was a non-contract. It was an oral contract, right? It was an oral contract. Obviously, the standard under commercial law is reasonableness, and that's why he picks those industry standards to measure against. He's meeting a reasonableness standard in the absence of a written contract. And the very cases, the antitrust cases, the Rossi court case and the Callahan case that the plaintiffs rely upon say, you can't draw an inference of causation by doing that. You can only, and this is an antitrust causation. This is antitrust cases where the standard of do you get damages is relaxed a little bit, but the court says you can only draw the inference of causation in a but-for analysis, which itself is disfavorable. So in essence, if your case comes down to the standard here is that unless they show account by account causation loss, they're out of court. No, Your Honor, it's not. They could have done a statistical sampling. The Ninth Circuit has recognized this in the Rutanasan case, that statistical sampling is possible and appropriate in medical billing cases. They did do some of that, but probably did not ask the right questions. Is that what you're saying? No. A statistical sampling of actual patient accounts. They didn't look at any actual patient accounts. The uncontroverted testimony in this case. Just as the judge said, they asked the wrong question. They did look at actual accounts. They categorized them. If they weren't paid because not because of delay, granted that they were delayed, but because they were the doctor wasn't credentialed or because it wasn't a covered item. Procedures not covered. Any of the 10 reasons that they asked the wrong question. They in their analysis they asked the wrong. They structured the analysis in a way that does not allow a trier of fact to conclude that the patient is not a covered item. That damages or any damages were caused by per se. The proper analysis was described in uncontroverted evidence by our expert, Kevin O'Brien, in the record. He said, look at your problem accounts. Go to the accounts where you think there have been a loss and dig in a little bit. They had the records. Their MAC billing service had many, many. What I'm having trouble with this is this is summary judgment context. The trial judge took it away from the jury. And in essence is saying no reasonable juror on these three items. He lists and the statistical evidence of variance. No reasonable person could conclude that you caused any of this damage. Any of it. That's what the district court's decision says. It says at summary judgment their burden is to show, to raise a triable issue of fact that once they get into the courtroom in front of the jury, they are going to be able to prove every element of their cause of action. They've got a lot of evidence that they're going to say is evidence of breach of negligence. They've got e-mails. They have testimonies. My original question, which you denied, is that the judge here was requiring evidence on every single account in order to survive summary judgment. Not evidence on every, not evidence. I'm sorry, Your Honor. Not evidence on every single account. He was requiring evidence on some accounts. An analysis. An analysis where an expert looked in and said I've looked at these 300 accounts. I've looked at these thousand accounts. I've looked at these 5,000 accounts, however they were going to do it. And I've actually looked at the records and I've looked at the reasons for the denial. And there are losses here that would not have occurred but for the negligence of per se. But they didn't do that. Counsel, are you referring to the Ratanson case? Yes. And that's the kind of statistical sampling that's required. It's described in that case. That is described in that case, yes. That was a medical over billing case. It's a Medicare fraud case and damages in a bankruptcy. Well, take it from the simplest case. Suppose per se just never billed at all. Obviously no payment came back from that. What do they need to show beyond that? They failed to bill and that if they had billed that the insurer would have actually paid. Is that what you're saying? Yes, they do. They need to show, have some evidence that if the bills had been submitted, they would have been paid. Otherwise it's a otherwise what you're doing is you're conflating breach and causation. That's the missing link in terms of your causal link. That is the missing link here. They chose to do their analysis in a way that would not allow a trier of fact to make that link. And they've got a lot of cases that come from the personal injury context where they say all we have to show is that you're a substantial factor. I think one of them is Aramidian where a victim was unconscious lying in the street and then run over by a bakery truck. And there the courts say, well, all you have to show is you're a substantial factor. Why? Because we know that some of the injuries, we know that there's some injury that's attributable to the fact that the truck ran over the poor unconscious man in the street. Here you cannot drive that conclusion because they have not analyzed a single account to show that but for the negligence they are claiming, they would have collected money. And that's what they needed to do to get to a trier of fact. They needed to at least raise a triable issue in the court with facts showing that. I mean, even for the $350,000 where you have an email that admits we've got to write these off because of our default. It does because it's talking about an appeal. Yes, Your Honor. Any other questions, Your Honor? No further questions. Thank you, Counsel. Mr. Crutier, you have some reserved time. Not a lot, but a little. Thank you. I wanted to address a couple of things. The first is I think Judge Jones' question is exactly right. The issue is whether a reasonable juror could conclude based upon the record that there was any causation. I would argue that the email alone that we spent a lot of time on, the $350,000 email, that this is a write-off due to our operational downfall. I don't think anybody in good conscience can say that. But what about the next link? You just heard our little exchange here. What is there in the record which would show that if they had been billed, that they would indeed have been paid? Well, that inference can be drawn on summary judgment from the fact that they collect hundreds and thousands of bills. And if they go beyond this, it's like saying if it goes beyond the statute, how do I know that that would have been paid? I don't have to prove every one that went beyond the statute would have been paid, but I'm entitled to an inference that a timely submitted bill to Blue Shield is going to be paid. And they're not entitled to an inference that absent that. Beyond the inference, is there any evidence in the record that would have included in any of these experts some sort of a study as to what the payments would have been if the bills had been sent? That's what MAC did when it analyzed the 23,000 accounts and came up with those that had gone beyond the statute. And then Mallory put a dollar figure on the added those up and came up with a dollar figure. He didn't prove the causation. He added the damages. He calculated the damages based upon the causation determined by my MAC. And let me address one point he made about that, if I have any time left. He says that Mr. Coleman said the purpose was not to find out whether Perseid committed fault, and obviously not. MAC was hired in a pragmatic real world sense to collect the money on those accounts. It got a box of uncredentialed accounts and tried to collect them. Many of them were past limits. Many of them for 18 months had not been submitted. And then so he says, of course, I wasn't hired as an expert in this case in the litigation context. I was hired to do the work to collect the money. Nevertheless, his work in reviewing each and every account came up with relevant information we can use in litigation. All right. Thank you, counsel. The case just argued will be submitted for decision.
judges: Dw Nelson, O'scannlain, Jones